ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 15 2012
CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | §   No. |
| | § |
| MICHAEL DAVID GOODWIN (1) | §   2-12CR-087-J |
| | § |

# INDICTMENT

The Grand Jury Charges:

At all times material to this Indictment:

### The Texas Medicaid Program

1. The Texas Medical Assistance Program (Medicaid) was a state program jointly funded by the State of Texas and the federal government that provided medical and related services to families with dependent children and aged, blind, or disabled individuals whose income and other financial and economic resources were insufficient to allow them to meet the cost of necessary medical services. Individuals enrolled in the Texas Medicaid program were called "beneficiaries."

2. The Texas Medicaid program was a "health care benefit program" as defined by 18 U.S.C. § 24(b).

3. Texas Health and Human Services Commission (THHSC) has been the administering state agency for the Medicaid program in Texas since September 1, 2001.

Indictment – Page 1

THHSC contracted with Texas Medicaid & Healthcare Partnership (TMHP) to receive enrollment applications from prospective Medicaid providers, assign Medicaid provider numbers, supply providers with information regarding Medicaid policies and regulations, and process and pay Medicaid claims.

4. One benefit of the Texas Medicaid program was orthodontic services for Medicaid beneficiaries fitting the following criteria:

   a) children who are 12 years of age and older with severe handicapping malocclusions;

   b) children who are up to 20 years with cleft palate; or

   c) other special medically necessary circumstances, including crossbite therapy and head injury involving severe traumatic deviation.

Texas Medicaid did not cover orthodontic services for cosmetic purposes only.

### Qualifying to be a Medicaid Orthodontic Provider

5. In order to bill the Texas Medicaid Program, a dentist or orthodontist had to be an approved orthodontic provider by TMHP. Medicaid orthodontic providers had to complete an Enrollment Application and sign a Provider Agreement for each separate practice location. Approved providers received unique provider identifiers for each practice location.

6. Orthodontic providers were not permitted to bill the Texas Medicaid Program under their own unique provider identifier for services provided by associate dentists within the same practice or independent dentists contracting with the practice.

7. By signing a Texas Medicaid Provider Agreement and submitting Medicaid claims, orthodontic providers agreed to comply with the Texas Medicaid Provider Procedure Manual (Provider Manual), which incorporated the Texas Dental Practices Act (TDPA) and the Rules and Regulations of the Texas State Board of Dental Examiners (TSBDE) (collectively, the "Medicaid Rules"). Providers also agreed to become educated and knowledgeable about the contents of the Medicaid Rules and all information and instructions in bulletins and other materials furnished by TMHP. Providers were also responsible for ensuring that all employees and agents were knowledgeable about and complied with the Medicaid Rules.

## Medicaid Service Requirements

8. Medicaid Rules required orthodontists to receive prior authorization for a beneficiary's complete treatment plan before beginning treatment. After determining that a particular beneficiary met Medicaid's criteria for orthodontic treatment (such as having a severe handicapping malocclusion or a cleft palate), Medicaid Rules mandated the provider to submit a request for services to TMHP along with documentation supporting medical necessity and appropriateness. This documentation included the Handicapping Labiolingual Deviation (HLD) Index form, which the Medicaid Rules required the provider to complete and sign.

9. Upon receipt of prior authorization, providers could initiate approved orthodontic treatment. The prior authorization was issued to the requesting provider only and was not transferrable to any other orthodontic provider.

10. Providers submitted claims, either on paper or through an electronic claims management system, for the approved orthodontic services actually provided to Medicaid beneficiaries. On each claim submitted, providers verified that:

a) the services were personally rendered by the billing provider or under their personal supervision, if allowed under state laws and regulations (Personal supervision meant the provider was personally operating on a patient and authorized the assistant to aid treatment by concurrently performing a supportive procedure);

b) all claims were true, correct, and complete;

c) the form was prepared in compliance with the laws and regulations governing Medicaid; and

d) the services billed were medically necessary.

11. Medicaid claims had to include: the Medicaid beneficiary's name and unique Medicaid identification number; the name and identification number of the qualified professional who provided the service; the Current Dental Terminology (CDT) procedure code of the specific service that was provided; the date of service; and the charge for the service.

12. Medicaid permitted providers to delegate the authority to submit claims to members of the office staff, but the enrolled billing provider remained responsible for the accuracy of all information on a claim submitted for payment.

13. Medicaid Rules required that, for each patient encounter billed to Medicaid, the enrolled dental provider must (a) examine the patient; (b) confirm or revise the diagnosis of record; and (c) confirm or revise a plan of care.

14. While Medicaid Rules allowed a dental provider to delegate certain tasks to dental assistants (DAs), Medicaid Rules prohibited a dental provider from delegating, under any non-emergency circumstance, (a) comprehensive examination of a patient; (b) diagnosis of a patient; and (c) treatment planning.

15. Under the Medicaid Rules, the only tasks a DA could perform when the dental provider was not physically present in the dental office were (a) making dental x-rays, if the DA was certified to do so, and (b) providing interim treatment of a minor emergency dental condition to an existing patient of the treating dentist.

16. All Medicaid providers were required to furnish covered Medicaid services to Medicaid beneficiaries in the same manner, to the same extent, and of the same quality as services provided to other patients.

## The Business

17. Goodwin Orthodontics, PLLC (Goodwin Orthodontics), was a Texas professional limited liability company initially located at 4000 w. 34th, Suite A, Amarillo, Texas. In or about November, 2009, Goodwin Orthodontics relocated to 3629 Wolflin Avenue, Amarillo, Texas. Goodwin Orthodontics provided orthodontic services to Medicaid beneficiaries and others. Approximately 90 to 95 percent of Goodwin Orthodontics' patients were Medicaid beneficiaries.

## The Defendant

18. **Michael David Goodwin (Goodwin)** was the principal at Goodwin Orthodontics. **Goodwin** was licensed by the Texas State Board of Dental Examiners in

or about October 26, 2007, and purchased an orthodontic practice in Amarillo from another orthodontist in or about January 1, 2008. **Goodwin** was enrolled as a Texas Medicaid dental provider in or about February 13, 2008, and was assigned provider number 1893661-01. **Goodwin** was the only dental provider enrolled with the Texas Medicaid program at Goodwin Orthodontics. **Goodwin** was also a licensed dentist in Indiana, since in or about 1977, and in Colorado, since in or about 2000, and actively practiced in Crown Point, Indiana, at Goodwin Orthodontics, LLP.

### The Scheme and Artifice to Defraud

19. Beginning at least in or about January, 2008, and continuing thereafter until at least March 31, 2011, **Goodwin** devised a scheme and artifice to defraud the Texas Medicaid program, and to obtain money and property from the Texas Medicaid program by means of false and fraudulent material pretenses, representations, and promises, in connection with the delivery of and payment for health care services, namely orthodontic treatment. Specifically, pursuant to this scheme, **Goodwin** billed the Texas Medicaid program more than $2,000,000 for services he claimed he provided when, in fact, as he well knew, some of the services were not medically necessary, DAs provided those services when no dentist or orthodontist was present to supervise, and even when present, did not directly supervise or provide any services. As a result of this scheme, Medicaid paid in excess of $1,500,000 for claims filed by **Goodwin**.

20. It was part of the scheme and artifice to defraud that:

a) Because he maintained offices in Amarillo and Indiana, **Goodwin** implemented, or caused the implementation of, a "rotation" schedule where he practiced orthodontic dentistry approximately two weeks each month at Goodwin Orthodontics in Amarillo and approximately two weeks each month at his Indiana office.

b) **Goodwin** submitted, or directed his employees to submit, HLD Index forms that falsely and fraudulently represented that beneficiaries had been examined by **Goodwin** and had a medical necessity for braces, when in fact the treatment was for cosmetic purposes only and did not qualify for Medicaid reimbursement. **Goodwin** signed HLD forms in advance of patient examinations so that his employees could submit preauthorization forms to Medicaid without his evaluation. **Goodwin** instructed, or caused employees to instruct, billing staff to falsely and fraudulently state or represent on Medicaid claims that there was medical necessity on all claims for all services billed for Medicaid beneficiaries whose treatment was merely for cosmetic purposes and was without medical necessity.

c) In order to maximize the number of Medicaid patients seen, employees often scheduled more patients in a day than a single orthodontist could treat while complying with Medicaid Rules and meeting minimum orthodontic standards of care as recognized by the TSBDE. Employees regularly scheduled more than 100 patients per day and intentionally scheduled large numbers of Medicaid patients for days when **Goodwin** was scheduled to be out of town.

d) To accommodate the large volume of patients, **Goodwin** directed, or caused employees to direct, DAs to perform impermissible acts, including comprehensive examinations, diagnoses, and treatment planning for Medicaid patients when he knew that only licensed dentists were permitted to perform those acts. **Goodwin** also devised, or caused to be devised, a generic treatment guideline for DAs to follow in treating Medicaid beneficiaries that included DAs making treatment decisions at most appointments without **Goodwin** examining the patients; confirming or revising the diagnoses; or confirming or revising the treatment plans. In many cases, DAs installed Medicaid patients' braces before **Goodwin** had ever examined the patients.

e) When **Goodwin** was absent from the office, out of town, arrived late, or left early from the office, his DAs treated Medicaid beneficiaries without a dentist or orthodontist present to supervise them.

f) **Goodwin** instructed, or caused employees to instruct, billing staff to falsely and fraudulently state or represent on Medicaid claims that he was the performing provider for all services impermissibly delegated to and performed by DAs.

g) Beginning in or about April, 2009, **Goodwin** hired, or caused employees to hire, substitute dentists to create the appearance of direct supervision of DAs when he was away from the office. The substitutes, who were general dentists rather than orthodontists, were not enrolled Medicaid orthodontic providers for Goodwin Orthodontics. Further, the substitutes did not actually provide services to Medicaid

beneficiaries, did not directly supervise the DAs who provided the services, and were not always present in the office for orthodontic procedures.

h) **Goodwin** failed to educate Goodwin Orthodontics' employees on Medicaid Rules and failed to ensure the employees complied with those rules.

i) **Goodwin** did not furnish services to Medicaid beneficiaries to the same extent as other patients, in that he personally examined patients who paid cash for their orthodontic treatment at virtually every scheduled appointment, while he only examined Medicaid patients every third appointment or less.

<u>Count One</u>
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

1. The introduction of this indictment is re-alleged and incorporated by reference.

2. On or about June 29, 2009, in the Amarillo Division of the Northern District of Texas, defendant **Michael David Goodwin** knowingly and willfully executed the above-described scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of the Texas Medicaid program, a health care benefit program as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in that **Goodwin** submitted, or caused to be submitted, a claim for reimbursement, to wit: Claim Number 200918067226765 for Patient S.R. containing CPT Codes Z8080 & Z2009 in the amount of $225.00, and **Goodwin** knew that the claim was materially false and fraudulent, in that the claim falsely represented there was medical necessity for orthodontic treatment when there was none and the claim falsely represented **Goodwin** provided the services when a DA provided the service.

## Counts Two through Six
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

1. The introduction of this indictment is re-alleged and incorporated by reference.

2. For each count listed in the chart below, on or about the date stated, in the Amarillo Division of the Northern District of Texas, defendant **Michael David Goodwin** knowingly and willfully executed the above-described scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of the Texas Medicaid program, a health care benefit program as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in that **Goodwin** submitted or caused to be submitted the listed claims for reimbursement knowing those claims were materially false and fraudulent, in that the claims falsely represented that **Goodwin** was the performing provider when, in fact, DAs provided the services, **Goodwin** was out of town, and there was not a dentist or orthodontist present in the office:

| Count Number | Patient | Date of Service | CPT Code Billed | Amount Billed | Claim Number |
|---|---|---|---|---|---|
| 2 | Z.R. | October 16, 2008 | D8670 | $100.00 | 200829453331213 |
| 3 | T.U. | February 24, 2009 | D8670 | $100.00 | 200907190904839 |
| 4 | J.B. | November 19, 2009 | D8670 | $100.00 | 200932351761186 |
| 5 | R.B. | December 17, 2009 | D8220 & 1057D | $300.00 | 200935159251693 |
| 6 | S.A. | April 22, 2010 | D8670 | $100.00 | 201011389971934 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

## Counts Seven through Eleven
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

1. The introduction of this indictment is re-alleged and incorporated by reference.

2. For each count listed in the chart below, on or about the date stated, in the Amarillo Division of the Northern District of Texas, defendant **Michael David Goodwin** knowingly and willfully executed the above-described scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of the Texas Medicaid program, a health care benefit program as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in that **Goodwin** submitted or caused to be submitted the listed claims for reimbursement knowing those claims were materially false and fraudulent, in that the claims falsely represented that **Goodwin** was the performing provider when, in fact, DAs provided the services and a substitute dentist was present, but not providing any services or directly supervising treatments:

Indictment – Page 13

| Count Number | Patient | Date of Service | CPT Code(s) Billed | Amount Billed | Claim Number |
|---|---|---|---|---|---|
| 7 | A.B. | July 28, 2009 | D8670 | $100.00 | 200920973909400 |
| 8 | J.A. | November 16, 2009 | D8670 | $100.00 | 200932050896487 |
| 9 | R.B. | February 15, 2010 | D8210 & 1027D | $200.00 | 201004673072421 |
| 10 | S.A. | May 17, 2010 | D8690 | $50.00 | 201013795933125 |
| 11 | D.A. | February 18, 2011 | D8670 | $100.00 | 201104968342294 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

## Forfeiture Allegation
### (18 U.S.C. § 982(a)(7))

Upon conviction for any of the offenses alleged in Counts One through Eleven of this Indictment and pursuant to 18 U.S.C. § 982(a)(7), defendant **Michael David Goodwin** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the respective offense.

This property includes, but is not limited to, the following:

a. Money Judgment: A sum of money equal to at least $1,558,911.01, representing the total amount of gross proceeds traceable to the commission of the offenses listed in Counts One through Eleven;

b. $108,083.25 in U.S. currency seized on May 27, 2011, from JP Morgan Chase Bank account number xxxxx7184;

c. $11,075.60 in U.S. currency seized on July 6, 2011, from JP Morgan Chase account number xxxxx5742;

d. $36.02 in U.S. currency seized on July 6, 2011, from JP Morgan Chase account number xxxxx4710;

e. $55,000.00 in U.S. currency seized on July 6, 2011, from JP Morgan Chase account number xxxxx5767; and

f. $70,040.80 in U.S. currency seized on July 6, 2011, from JP Morgan Chase account number xxxxx5916.

## Substitute Assets

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), if any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property from the defendant up to the value of the forfeitable property described above.

A TRUE BILL

_____
FOREPERSON

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

_____
SALLY HELMER
Special Assistant United States Attorney
Texas State Bar No. 24000090
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5447
Facsimile: 817.252.5455
Email: sally.helmer@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

---

THE UNITED STATES OF AMERICA

VS.

MICHAEL DAVID GOODWIN (1)

---

INDICTMENT

18 U.S.C. §§ 1347 and 2
Health Care Fraud

(11 COUNTS)

18 U.S.C. § 982(a)(7)
Forfeiture Allegation

A true bill rendered:

*[signature]*
FOREPERSON

FORT WORTH

Filed in open court this 15th day of August, A.D. 2012.

Summons to Issue

*[signature]*
UNITED STATES MAGISTRATE JUDGE

ORIGINAL

*Criminal Case Cover Sheet*

| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **Related Case Information** |
| **NORTHERN DISTRICT OF TEXAS** | Superseding Indictment: ☐ Yes ☒ No |
| | New Defendant: ☒ Yes ☐ No |
| 1. **Defendant Information** | Pending CR Case in NDTX: ☐ Yes ☒ No |
| Juvenile: ☐ Yes ☒ No | Search Warrant Case Number: |
| Sealed: ☐ Yes ☒ No | Rule 20 from District of: |
| | Magistrate Case Number: |

Defendant Name

**MICHAEL DAVID GOODWIN (1)**

Alias Name:
Address

2. **U.S. Attorney Information**
   SAUSA   Sally Helmer                              Bar # 24000090

3. **Interpreter**
   ☐ Yes  ☒ No
   If Yes, list language and/or dialect: _____

4. **Location Status**
   Arrest Date:

   ☐ Federal Inmate
   ☐ Already in State Custody
   ☐ On Pretrial Release
   ☐ Warrant to Issue
   ☒ Summons to Issue

5. **U.S.C. Citations**
   Total # of Counts as to This Defendant:  11 + Forfeiture  ☐ Petty  ☐ Misdemeanor  ☒ Felony

   | Citation | Description of Offense Charged | Count(s) |
   |---|---|---|
   | 18 U.S.C. §§ 1347 and 2 | Health Care Fraud | 1-11 |
   | 18 U.S.C. § 982(a)(7) | Forfeiture Allegation | Forfeiture Allegation |

   Date  8-15-12                                          Signature of SAUSA: [signature]